IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| WANDA L. FLOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:10-CV-072 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1963. She applied for benefits in July 2007, claiming to be disabled by an injury to her back. [Tr. 123, 129, 163]. Plaintiff alleged a disability onset date of August 23, 2006. [Tr. 123, 129]. Her applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an

Administrative Law Judge ("ALJ") in October 2008.

In January 2009, the ALJ issued a decision denying benefits. [Tr. 40-45]. Plaintiff then sought, and was granted, review from the Commissioner's Appeals Council. The Appeals Council remanded plaintiff's claims to the ALJ with, in material part, the following instructions:

> The Administrative Law Judge found that the claimant can perform light work activity . . . . The medical evidence of record suggests the need for postural limitations. On May 22, 2007, the claimant's treating physician limited the claimant to minimal bending, twisting or squatting. . . . . [B]y October 23, 2008, the treating physician was of the opinion that the claimant could do no squatting or forward bending. . . . As indicated in Social Security Ruling 83-14, light work usually requires . . . that the worker is able to do occasional bending of the stooping type, i.e., for no more than one-third of the workday . . . by bending the spine at the waist. The treating physician's October 23, 2008 opinion is not consistent with the residual functional capacity assessment. Therefore, the Administrative Law Judge will weigh this opinion evidence, as required by 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p and provide rationale in support thereof.
>
> . . .
>
> The Administrative Law Judge will obtain evidence from a vocational expert to clarify the effect of the assessed limitation on the claimant's occupational base . . . . Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) . . . (Social Security Ruling 00-4p).

[Tr. 32-34].

Plaintiff received another administrative hearing in August 2009. In November of that year, the ALJ again issued a decision denying benefits. He concluded that plaintiff

suffers from "degenerative disc disease, chronic back pain, and obesity," which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 11, 14]. The ALJ found plaintiff to have a residual functional capacity ("RFC") at the light level of exertion restricted only by the need for a sit/stand option. [Tr. 15]. Relying on vocational expert ("VE") testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the national economy. [Tr. 17]. The ALJ thus concluded that plaintiff is not disabled.

Plaintiff then again sought, but was denied, review from the Commissioner's Appeals Council. [Tr. 1]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g). For the most part, plaintiff argues that the ALJ did not comply with the Appeals Council's remand instructions. In addition, she contends that the ALJ "ignored the emotional problems of the Plaintiff and the Plaintiff's treatment by her local community health center."

II.

*Relevant Background*

A. Personal

Plaintiff can drive, perform some housework, raise two or three young children, "have a yard sale," and travel regularly to sporting events with her children. [Tr. 172, 183, 301, 366]. She stands 5'3" tall and weighs up to 204 pounds. [Tr. 301, 372].

3

Plaintiff testified that she cannot sit "for long periods of time" or, alternatively, "for no periods of time." [Tr. 52-53]. She testified, "I can't stand" and "I stay at home all the time." [Tr. 53-54].[1]

Plaintiff also testified, "I don't read at all . . . ." [Tr. 24]. She then added, "I, I mean, I read, you know, like my name and you know, general stuff." [Tr. 24-25]. In a Disability Report form submitted to the Commissioner, plaintiff affirmed that she can "read and understand English" [Tr. 162], and she has also told the Commissioner that she has glasses for the purpose of reading. [Tr. 189].

B. Medical

Dr. Glenn Trent began treating plaintiff in 2006 in association with a workers' compensation claim. [Tr. 230]. Subsequent to an alleged August 2006 on-the-job fall, plaintiff reported hip and lumbar pain. [Tr. 230]. Dr. Trent's x-ray revealed a "[r]elatively normal-looking lumbar spine" with minimal to zero nerve root compression and only a "slight" herniation at L4-5. [Tr. 229-30, 291]. The physician opined that plaintiff could continue in her light-to-sedentary job. [Tr. 229].

Plaintiff was evaluated by a physical therapist in September 2006. On that day, she was noted to be able to bend forward only 20 degrees. [Tr. 274]. Plaintiff was deemed to have "good" potential for rehabilitation. [Tr. 273]. However, she subsequently exhibited "minimal" tolerance for therapeutic exercises and was "intermittent" in her attendance. [Tr.

---

[1] The administrative record reveals that plaintiff can in fact sit, stand, and leave her home. [Tr. 227].

253]. The therapist accordingly noted "no progress." [Tr. 252].

Upon referral from Dr. Trent, plaintiff was seen at the office of pain medicine specialist Timothy Smyth in November 2006. Dr. Smyth's nurse practitioner, Holly Broadwater, reviewed plaintiff's lumbar MRI and saw "no herniated disc or spinal stenosis." [Tr. 223]. Two weeks later, Dr. Smyth performed an epidural injection despite plaintiff's "normal MRI." [Tr. 220-21]. Dr. Smyth "tried to be encouraging in that I told her that it is a good thing that her MRI is normal because this means that she should be able to overcome this pain through proper exercise, diet, [and] cessation of smoking." [Tr. 220].

A lumbar myelogram and further lumbar imaging were performeded in January 2007. The results of both studies were "unremarkable." [Tr. 224-25].

On February 26, 2007, Dr. Trent continued to see no objective cause for plaintiff's pain complaints. [Tr. 228]. He, too, recommended exercise, smoking cessation, and "good health choices." [Tr. 228]. In May 2007, Dr. Trent noted "[d]egenerative disc disease" and expressed his agreement with a recent functional capacity evaluation ("FCE"). [Tr. 227]. That study had "show[n] that she is capable of lifting 20 lbs. occasionally, 10 lbs. frequently." Dr. Trent "would try to keep her basic shift to eight hours a day, and keep bend, twist, and squat to a minimum, and this places her in a light to sedentary job category." [Tr. 227].

In September 2007, treating physician Donald Tarr opined that plaintiff suffers from situational anxiety. [Tr. 295]. Dr. Tarr clarified, however, that plaintiff has an

5

"[e]ssentially normal Mental Status" and that her anxiety (and any associated transient depression) should not interfere with workplace functioning. [Tr. 295].

Dr. Krish Purswani performed a consultative examination in October 2007. Dr. Purswani reviewed plaintiff's "normal" January 2007 lumbar imaging and considered her subjective complaints. [Tr. 300]. On physical examination, plaintiff could bend her back to some extent and she exhibited full strength in all extremities. [Tr. 302]. Dr. Purswani opined that plaintiff would be limited to lifting no more than 10 pounds on an occasional basis. [Tr. 303]. In support of that conclusion, he cited plaintiff's subjective complaints and Dr. Trent's May 2007 mention of "degenerative disc disease." [Tr. 302-03].

Nonexamining physician Robert Doster completed a Physical RFC Assessment form in November 2007. Dr. Doster considered the existing medical record [Tr. 314] and opined that plaintiff can lift 20 pounds occasionally and 10 pounds frequently. [Tr. 308]. He deemed Dr. Purswani's assessment "too restrictive given the objective findings." [Tr. 313]. With the exception of climbing ladders, Dr. Doster opined that plaintiff can engage in postural activities, such as stooping, on an occasional basis. [Tr. 309].

In November 2007, plaintiff again visited nurse practitioner Broadwater. Ms. Broadwater recommended additional physical therapy. [Tr. 316]. She "also recommended . . . weight reduction and smoking cessation as both are indicators of why she is not getting better." [Tr. 316].

6

Nonexamining physician Robin Richard completed a Physical RFC Assessment form in April 2008. Dr. Richard considered the existing medical record [Tr. 325] and opined that plaintiff can lift 20 pounds occasionally and 10 pounds frequently. [Tr. 319]. Dr. Richard deemed Dr. Purswani's assessment "too restrictive given [the] objective findings." [Tr. 324]. Dr. Richard opined that plaintiff can engage in all postural activities on an occasional basis. [Tr. 320].

Plaintiff returned to Dr. Tarr on September 25, 2008, complaining of increased back pain secondary to a fall in the shower. [Tr. 333]. A lumbar radiograph performed that same date was "unremarkable." [Tr. 332].

Plaintiff returned to Dr. Trent four days later. She had gained 70 pounds in the prior two years and she reported worsening pain. [Tr. 327]. Dr. Trent noted that the lumbar region was in part "somewhat tender," but plaintiff "present[ed] without list or spasm." [Tr. 326]. Dr. Trent decided "to send her to get another MRI if we can get it approved. I think this will help her settle issues in her mind and move on. There is not really anything further that can be done if this MRI is unchanged. See [her] here after MRI is done." [Tr. 326].[2]

On October 23, 2008, Dr. Tarr wrote to plaintiff's counsel. [Tr. 354]. In material part, that letter provided,

> Following today's office visit of Wanda Floyd, please be advised of the following Notations, which are in response to your request for a 'range of motion exam' for Ms. Floyd.

---

[2] The administrative record does not indicate that the MRI was approved or performed.

> With patient erect, forward flexion in the lumbar area is 0°. Actual forward bending is accomplished only in the mid-thoracic area and is limited to 3° due to advanced Degenerative Disc Disease. Patient cannot squat or bend forward
> . . . .

[Tr. 354]. Dr. Tarr's office records from the referenced visit are not a part of the administrative file.

Dr. Hank Clay performed a consultative examination on March 16, 2009. In material part, Dr. Clay opined that plaintiff: can lift no more than 10 pounds; can bend, but for no more than one-third of an eight-hour workday; and cannot sit and stand for sufficient lengths of time to complete an eight-hour workday. [Tr. 356].[3]

Plaintiff presented to Johnson County Counseling ("JCC") in January 2009 with complaints of depression, family problems, and difficulty coping with daily living. [Tr. 359]. Specifically, family members' struggles with dementia and/or substance abuse were "driving her crazy." [Tr. 359]. "Gwendolyn Smith, BA" entered a diagnosis of major depression and rated plaintiff a "48" on the GAF scale. [Tr. 362, 364].[4]

Plaintiff met with Ms. Smith again on February 17, 2009. Plaintiff stated that she "was not doing good" due to daily anxiety. [Tr. 364]. Stressors were the condition of her home ("a terrible mess") and "tr[ying] to help everyone in her family with their problems and [not taking] time for herself." [Tr. 364]. Ms. Smith suggested therapy, but plaintiff was

---

[3] Somewhat nonsensically, Dr. Clay also opined that plaintiff can sit for four hours *at a time*, but that in an eight-hour workday she can only sit for three hours *total*. [Tr. 356].

[4] The record does not reveal Ms. Smith's title or qualifications.

not interested.

Plaintiff returned to Ms. Smith's office on March 20, 2009. Plaintiff continued to report anxiety and depression because "her family 'makes me that way'" and because "her house is still a mess and she hasn't started to clean." [Tr. 365]. Ms. Smith next visited plaintiff in May 2009 at plaintiff's mother's residence. Plaintiff claimed ongoing anxiety due to family and finances. [Tr. 366]. She planned to "have a yard sale and try to make some money." [Tr. 366]. Over the next two months, the same stressors were alleged and plaintiff was "eating too much." [Tr. 367-69].

III.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review.

9

*Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[5] Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[5] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

*Analysis*

Plaintiff raises numerous issues in support of reversal or remand. The court will address those issues in turn.

A. Dr. Tarr

Plaintiff first argues that the ALJ erred in disregarding the Appeals Councils' remand instruction to evaluate Dr. Tarr's assessment of no ability to squat or bend. In addressing Dr. Tarr's opinion, the ALJ wrote in full, "The undersigned has considered the opinion of Dr. Tarr regarding the claimant's range of motion, but rejects that opinion as being too restrictive and inconsistent with the remaining documentary evidence of record." [Tr. 13]. The court agrees that this rationale - viewed in isolation - is less than illuminating.

11

However, reading the ALJ's decision in its entirety, any alleged error is deemed harmless. *See, e.g., Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result."). An error may be deemed harmless if the court is able to discern at least *some* indirect support for the challenged rejection of a pertinent opinion, such as where the ALJ's reasoning can be inferred from his overall discussion. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 465-67 (6th Cir. 2005).

As noted, the ALJ rejected Dr. Tarr's opinion as "too restrictive and inconsistent with the remaining documentary evidence of record." Review of the ALJ's decision clarifies which "documentary evidence" he considered. The ALJ cited: the lumbar MRI which, according to Dr. Smyth's office, showed "no herniated disc or spinal stenosis" [Tr. 11-12]; the "unremarkable" January 2007 lumbar imaging [Tr. 12]; Dr. Trent's May 2007 agreement with the FCE showing plaintiff to be capable of light work [Tr. 12]; and plaintiff's documented activity level (including some housework and attending sporting events with her children) [Tr. 16] which is totally inconsistent with a person who is unable to bend *at all*.

The opinions of treating physicians are entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner may reject the

opinion of a treating physician if it is not supported by sufficient medical data and if the ALJ articulates a valid basis for doing so. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Dr. Tarr's opined limitation, unaccompanied by any notes from the examination that date, is based on what he termed "advanced" degenerative disc disease. [Tr. 354]. An assessment of "advanced" degenerative disc disease is unexplained and unsupported. It is inconsistent with the objective evidence of record as cited by the ALJ and as summarized above. This issue merits neither reversal nor further discussion.

## B. Vocational Hypothetical

Plaintiff next argues that the hypothetical question presented by the ALJ to the VE contained "no limitations regarding the Plaintiff's bending, stooping, or squatting." Any alleged error is again deemed harmless.

The ALJ found plaintiff capable of light work subject to a sit/stand option. Treating physician Trent also found plaintiff capable of light work, with bending, twisting, and squatting kept to a minimum. [Tr. 227]. If a worker can engage in occasional bending, as found by the treating physician, then the occupational base for light work remains virtually intact. *See* SSR 85-15, 1985 WL 56857, at *7. Any error in the express contents of the vocational hypothetical was thus harmless.

C. <u>Light Work</u>

Plaintiff next argues that the ALJ erred in finding her capable of meeting the lifting requirements of light work. Plaintiff cites the opinions of consultative examiners Clay and Purswani, who each assessed a limitation more consistent with sedentary exertion.

It is again noted that treating physician Trent found plaintiff capable of lifting at the light level, as did nonexamining Drs. Doster and Richard. The ALJ determined that those opinions were more persuasive than those of Drs. Clay and Purswani, and the substantial evidence standard of review permits that "zone of choice." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The ALJ explained that he found the views of Drs. Doster and Richard to be "most consistent with the objective medical evidence of record." [Tr. 15]. That evidence has been discussed above and includes treating physician Trent's adoption of the FCE. That adoption - the opinion of a treating physician - is objectively supported and thus entitled to greater weight than the views of one-time examiners Clay and Purswani. *See* 20 C.F.R. § 404.1527(d)(2)-(3).

Further, the ALJ correctly found Drs. Clay and Purswani's views to be unduly based on plaintiff's subjective reporting. [Tr. 15]. The ALJ found plaintiff's subjective complaints not fully credible [Tr. 16], and the court concurs in that assessment. Plaintiff testified that she can sit "for no periods of time" [Tr. 53], but obviously she is capable of sitting. She testified, "I can't stand" [Tr. 53], yet she is obviously capable of standing. She testified, "I stay at home all the time" [Tr. 54], but that is not true. She testified "I don't read

14

at all" [Tr. 24] but then quickly clarified that she is in fact capable of reading. None of these misstatements, standing alone, rises to the level of being dispositive on the ultimate issue of disability. However, they are certainly evidence of a claimant who overstates her limitations.

Plaintiff's credibility is further diminished by her failure to follow the lifestyle instructions of multiple medical sources. Dr. Smyth, Dr. Trent, and nurse practitioner Broadwater each stressed that exercise, proper diet, and smoking cessation are keys to plaintiff's physical recovery. Nonetheless, she continues to smoke and overeat, and the administrative record does not reveal any meaningful attempts to exercise.

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive [her]self to an early grave, that is [her] privilege – but if [she] is not truly disabled, [she] has no right to require those who pay social security taxes to help underwrite the cost of [her] ride.

*Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).[6]

### D. SSR 00-4p

Next, plaintiff argues that the ALJ erred by not asking the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as instructed by the Appeals Council and as required by the Commissioner's Policy Interpretation Ruling

---

[6] *See also Dills v. Shalala*, No. 94-5051, 1994 WL 677692, at *1 (6th Cir. Dec. 2, 1994) ("There is ample evidence to suggest that Dill's well-being would improve considerably, moreover, if he stopped smoking, lost weight, . . . and began taking moderate exercise."); *Russell v. Sec'y of Health & Human Servs.*, No. 90-1395, 1990 WL 209576, at *3 (6th Cir. Dec. 19, 1990) ("[P]laintiff has been advised to stop smoking but he has failed to do so. This court has held that when a claimant's lifestyle contributes to his symptoms, and he is not truly disabled, he is not entitled to disability benefits.").

15

00-4p.  *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  Ruling 00-4p "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'"  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (*citing and quoting* SSR 00-4p).  Ruling 00-4p was issued to clarify the Commissioner's standards for the use of vocational expert testimony.

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:
>
> > Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4.  It is clear from the administrative transcript that the ALJ did *not* comply with SSR 00-4p [Tr. 25-29], even though his written decision implies that he did.  [Tr. 17].

An ALJ's failure to comply with SSR 00-4p often results in nothing more than harmless error.  *See, e.g., Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 574 (6th. Cir. 2007) ("such a procedural requirement would not necessarily bestow upon a plaintiff the right of automatic remand where that duty was unmet") (citation omitted).  The court finds the error harmless in this case.  Plaintiff fails to even suggest a possible conflict with the DOT descriptions.  The court is confident that, were there indeed even arguably a potential

16

conflict with the DOT, plaintiff's experienced counsel would have raised that issue in his brief. Again, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher*, 869 F.2d at 1057.

### E. Mental Impairment

Lastly, plaintiff argues that the ALJ's vocational hypothetical and RFC finding "ignored the emotional problems of the Plaintiff and the Plaintiff's treatment by her local community health center." The ALJ found plaintiff to have no more than minimal limitation in mental workplace functioning. [Tr. 14, 16]. The explanation of that conclusion was again less than illuminating, but any error is again deemed harmless. Harmless error may be found where a cited medical opinion was so patently deficient that no reasonable fact-finder could have credited it. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

It is first noted that treating physician Tarr opined that plaintiff has an "[e]ssentially normal Mental Status" which should not interfere with workplace functioning. [Tr. 295]. To the extent that plaintiff would instead rely on the views of "Gwendolyn Smith, BA," the court finds no medical opinion whatsoever in that source's records. The administrative file does not document Ms. Smith's title or qualifications. Her intake diagnosis of "major depression" does not speak to plaintiff's vocational abilities. The moderate GAF score assigned by Ms. Smith is a rating based on plaintiff's unreliable self-reporting and is thus of minimal value. *See generally DeBoard v. Comm'r of Soc. Sec.*, No.

17

05-6854, 2006 WL 3690637, at *3-4 (6th Cir. Dec. 15, 2006); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (citation and quotation omitted) (GAF score is a "subjective determination"); *Oliver v. Comm'r of Soc. Sec.*, No. 09-2543, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (a GAF score is generally "not particularly helpful by itself" and is "not dispositive of anything in and of itself"). Lastly, the complaints presented to Ms. Smith do not warrant reversal. Quite simply, a messy home and a dysfunctional family do not render one disabled.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge